UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| MARTY JOE BANGHART,<br><br>Petitioner,<br><br>vs.<br><br>DOUG CLARK[1], ACTING WARDEN;<br>and the ATTORNEY GENERAL OF THE<br>STATE OF SOUTH DAKOTA,<br><br>Respondent. | 4:21-CV-04066-KES<br><br><br>REPORT AND RECOMMENDATION |

**INTRODUCTION**

This matter is before the court on the *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 of Marty Joe Banghart, a person incarcerated at the South Dakota State Penitentiary. See Docket No. 1. Now pending are petitioner's motion for summary judgment and respondents' motion to dismiss Mr. Banghart's petition without holding an evidentiary hearing. See Docket Nos. 5 & 9. Mr. Banghart opposes the motion to dismiss, Docket Nos. 17 & 18, and respondents oppose the motion for summary judgment, Docket No. 10. This matter was referred to this magistrate judge for a recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and the

---

[1] Mr. Banghart originally named Darin Young, former warden of the South Dakota State Penitentiary, as a respondent. Mr. Young has been separated from that office. According to Federal Rule of Civil Procedure 25(d), the court substitutes Mr. Clark in his place.

October 16, 2014, standing order of the Honorable Karen E. Schreier, United States District Judge.

## FACTS

### A.    Underlying Criminal Case and Conviction

On November 17, 2014, Mr. Banghart was indicted by a Lincoln County, South Dakota, grand jury on six counts: two counts of first-degree rape, — domestic, in violation of SDCL § 22-22-1(1) and SDCL § 25-10-1; one count of fourth-degree rapedomestic, in violation of SDCL § 22-22-1(5) and SDCL § 25-10-1; and three counts of sexual contact with a child under the age of 16,domestic, in violation of SDCL § 22-22-7 and SDCL § 25-10-1. See Docket No. 10-1, p. 1.

A jury trial commenced on October 30, 2015. See State v. Banghart, 41CRI14-000648 at p. 586 (Vol. II Jury Trial Transcript ("JT") at p. 1); Docket No. 10-1, p. 2. During trial, the state offered evidence from Anna Eidem, a counselor at Tea Area Schools. Id. at p. 610 (Vol. II JT at p. 25). Ms. Eidem testified that in January 2013, S.B. ("victim") disclosed to her that she was being sexually abused by her father, Mr. Banghart. Id. at pp. 612, 617 (Vol. II JT at pp. 27, 32). Additionally, the state offered evidence from an interview Mr. Banghart had with South Dakota Division of Criminal Investigation ("DCI") Special Agent Jessica Page. Id. at p. 621 (Vol. II JT at p. 36). During that recorded interview, Mr. Banghart admitted to touching the victim's vagina. Id. at p. 630 (Vol. II JT at p. 45).

2

The victim testified that the first sexual contact from Mr. Banghart occurred in October 2009, when she was in the sixth grade. Id. at p. 660 (Vol. II JT at p. 75). The victim testified that this occurred at least once a month until January 2013. Id. at p. 663 (Vol. II JT at p. 78). During the time of sexual abuse, the victim testified that Mr. Banghart shaved her pubic area. Id. at p. 667 (Vol. II JT at p. 82). The victim testified that Mr. Banghart said he had to do it, otherwise he would bring the victim to the doctor to get shots; the victim testified that she was terrified of needles so she complied. Id. at p. 669 (Vol. II JT at p. 84).

On November 3, 2015, the jury returned a verdict of guilty on count 1, first-degree rape,domestic. State v. Banghart, 41CRI14-000648 at pp. 137-39; Docket No. 10-1, p. 2. A sentencing hearing was held on January 15, 2016, at which time the Honorable Jon Sogn, Second Judicial Circuit Court Judge, sentenced Mr. Banghart to 25 years' imprisonment in the South Dakota State Penitentiary, with 10 years suspended upon conditions to be determined by the Board of Pardons and Parole, with credit for 73 days previously served in jail. Docket No. 10-1, p. 3.

**B.    State Procedural History**

Mr. Banghart is currently in the custody of the South Dakota Department of Corrections pursuant to a judgment and sentence entered by the Honorable Jon Sogn in South Dakota state court on January 28, 2016. See Docket No. 10-1. During his trial, Mr. Banghart was represented by two attorneys, Paul Henry and Cynthia Berreau. Docket No. 1, p. 3.

Mr. Banghart appealed his conviction by filing a Notice of Appeal with the Supreme Court of South Dakota on February 11, 2016. <u>See</u> Docket No. 10-2. However, on August 11, 2016, Mr. Banghart filed a Motion to Dismiss Appeal and an Affidavit of Appeallant, stating, "no issues exist that could have the prospect of being successfully pursued on direct appeal". <u>See</u> Docket Nos. 10-3, 10-4. The same day, the Supreme Court of South Dakota then entered an order dismissing Mr. Banghart's appeal. <u>See</u> Docket No. 10-5.

While Mr. Banghart did not seek a writ of certiorari with the United States Supreme Court, Mr. Banghart, represented by attorney Steven R. Binger, filed an Application for Writ of Habeas Corpus in state court on February 23, 2017. <u>Banghart v. Young</u>, 41CIV17-000100 (2d Jud. Cir.); <u>See</u> Docket No. 10-6. In his petition, Mr. Banghart claimed that his trial counsel, provided ineffective assistance of counsel in violation of the Fourth and Sixth Amendments. <u>Id.</u> Mr. Banghart alleged that trial counsel's performance was deficient because they:

1. Failed to object to inadmissible testimony offered, or, in the alternative, failed to request any form of cautionary or limiting instruction regaring an incident wherein petitioner shaved the victim's pubic area with a razor;

2. Failed to object, permitted and solicited the opinion of the state's chief investigator that the testimony of the alleged victim was true, and that she believed and "knew" that the defendant was guilty of the offense;

3. Failed to object to testimony presented by an expert witness called by the state, and failed to consult with or present testimony from an expert to counter or rebut said testimony;

4. Failed to conduct a proper investigation of facts that would have demonstrated that the claims of the alleged victims were false.

Docket No. 10-6, pp. 3-5. In response, Darin Young, former warden of the South Dakota State Penitentiary, filed a Return to Provisional Writ of Habeas Corpus on March 16, 2017, denying all of Mr. Banghart's claims that he received ineffective assistance of counsel. See Docket No. 10-8.

More than two years later, Mr. Banghart filed an Amended Application for Writ of Habeas Corpus on August 26, 2019. See Docket No. 10-7. The amended application raised the same four claims of ineffective assistance of counsel as the original application, along with some additional language for claim three. Mr. Banghart's amended claim three stated:

> Counsel failed to object to testimony presented by an expert witness called by the State, and failed to consult with or present testimony from an expert to counter or rebut said testimony. Defense counsel further failed to present expert testimony showing that the proper procedures for conducting a forensic interview of the alleged child victim were not followed, and that the investigators' use of the alleged child victim in attempting to elicit incriminating statements from the petitioner served to improperly influence and reinforce the memory of a child witness.

Docket No. 10-7, p. 5.

The Honorable Sandra H. Hanson, Second Judicial Circuit Court Judge, held evidentiary hearings on August 2, 2019, and February 14, 2020. Docket No. 10-9, p. 1. Following the hearings, Judge Hanson issued a memorandum opinion denying habeas relief. Judge Hanson indicated in her opinion that Mr. Banghart only advanced the first two of his four claims of ineffective assistance of counsel at the evidentiary hearing and in post-hearing briefs: the alleged failures of trial counsel to (i) object to testimony by the state's expert or consult with or present a defense expert witness and (ii) object to evidence regarding Mr. Banghart shaving the victim's pubic area. Docket No. 10-9.

5

Thus, Judge Hanson found that, while Mr. Banghart raised the other two issues in his petition, "it appears he has abandoned them because he did not address them at the evidentiary hearing or in his post-hearing briefs. No evidence was provided to establish ineffective assistance of counsel with respect to these claims. Acorrdingly, the Court denies habeas relief with respect to them." Docket No. 10-9, pp. 16-17.

Judge Hanson entered an order dismissing the case and separately filed written findings of fact and conclusions of law on July 21, 2020. See Docket Nos. 10-10, 10-11. First, Judge Hanson held that Mr. Banghart failed to show that his trial counsel's performance was constitutionally deficient for failing to object to the admission of evidence regarding the shaving incident with the victim or that their trial strategy was deficient because, even if they had objected, Mr. Banghart failed to show the evidence was inadmissible in light of SDCL §§ 19-19-801(d)(2), 19-19-401, 19-19-402, and 19-19-403. Docket No. 10-10, pp. 9-10. Also, Judge Hanson held that Mr. Banghart failed to meet his burden of showing he was prejudiced by any action or inaction of trial counsels' strategy relating to expert witnesses. Id. Ultimately, Judge Hanson concluded that Mr. Banghart failed to satisfy the standards set by Strickland v. Washington, 466 U.S. 668 (1984), to prove he was denied his constitutional right to counsel during the underlying criminal case, and, thus, his claim for habeas relief was denied. Docket No. 10-10, p. 11.

On August 17, 2020, Mr. Banghart filed a Motion for Certificate of Probable Cause seeking permission to appeal to the Supreme Court of South

6

Dakota.  <u>See</u> Docket No. 10-12.  In his motion, Mr. Banghart requested to

appeal the issues of ineffective assistance of counsel for:

1. Failure to consult with or call a rebuttal expert witness, which
   manifested itself as follows:

   a. Failure to challenge the credentials of the state's witness;

   b. Failure to present expert testimony showing that the theories
      behind the state's expert's testimony were flawed and discredited
      by established scientific research;

   c. Failure to present expert testimony showing that the lack of a
      forensic interview tainted the investigation and lessened the
      reliability of claims made by the state's witness;

   d. Failure to present expert testimony showing that the late and
      inconsistent statements of the victim were suggestive of a motive to
      falsify.

2. Failure to object to the razor/shaving evidence

Docket No. 10-12, p. 3.  Judge Hanson denied Mr. Banghart's motion on

August 19, 2020.  <u>See</u> Docket No. 10-13.

On September 8, 2020, Mr. Banghart filed another Certificate of Probable

Cause with the Supreme Court of South Dakota.  <u>See</u> Docket No. 10-14.

Mr. Banghart sought permission to appeal the same issues of ineffective

assistance of counsel that he had requested in his previously filed Certificate of

Probable Cause.  <u>Compare</u> Docket No. 10-12, p. 3, <u>with</u> Docket No. 10-14, p. 3.

The Supreme Court of South Dakota denied Mr. Banghart's request on

February 26, 2021.  <u>See</u> Docket No. 10-15.

## C.    **Federal Habeas Petition**

On April 15, 2021, Mr. Banghart filed his Petition for Writ of Habeas

Corpus pursuant to 28 U.S.C. § 2254 with this court.  <u>See</u> Docket No. 1.  In his

petition, Mr. Banghart raises two grounds alleging ineffective assistance of counsel pursuant to the Sixth and Fourteenth Amendments to the United States Constitution.  Docket No. 1, p. 4, 6.  Within both grounds, Mr. Banghart alleges the same four claims of ineffective assistance of counsel:

1. Trial counsel's performance was deficient in that they failed to object to inadmissible testimony offered, or, in the alternative, failed to request any form of cautionary or limiting instruction regarding an incident wherein Mr. Banghart shaved the victims pubic area with a razor;

2. Trial counsel's performance was deficient in that they failed to object, permitted and solicited the opinion of the state's chief investigator that the testimony of the alleged victim was true, and that she believed and "knew" that Mr. Banghart was guilty of the offense;

3. Defense counsel failed to object to testimony presented by an expert witness called by the State and failed to consult with or present testimony from an expert to counter or rebut said testimony.  Defense counsel further failed to present expert testimony showing that the proper procedures for conducting a forensic interview of the allged child victim were not followed and that the investigator's use of the victim in attempting to elicit incriminating statements from Mr. Banghart served to improperly influence and reinforce the memory of a child witness;

4. Defense counsel failed to properly investigate facts that would have demonstrated that the victim's claims were false.

Docket No. 1, p. 5-6.  On April 15, 2021, after preliminary review of the petition, this court entered an Order for Service requiring the respondents to file and serve a response to the petition within thirty days after receipt of this order.  See Docket No. 4.

After not receiving a response from the respondents, Mr. Banghart filed a Motion for Summary Judgment on June 28, 2021.  See Docket No. 5. Respondents argue that on or about June 30, 2021, they received the

summary judgment motion but were unaware of Mr. Banghart's petition at that time.  Docket No. 10, p. 2.  Respondents contacted the District of South Dakota clerk's office[2] and discovered that a technical defect caused respondents to not receive the April 15 order.  Id.  Eventually, respondents filed their motion to Dismiss on July 19, 2021.  See Docket No. 9.  This matter is now fully briefed and ripe for decision.

## DISCUSSION

### A.    Petitioner's Motion for Summary Judgment

Mr. Banghart filed a motion for summary judgment with this court on June 28, 2021.  See Docket No. 5.  Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A court should grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).

Generally, the court must view the facts, and inferences from those facts, in the light most favorable to the nonmoving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); Helton v. Southland Racing

---

[2] Respondents contacted Summer Wakefield, United States District Court for the District of South Dakota Supervisory Deputy Clerk, by phone.

Corp., 600 F.3d 954, 957 (8th Cir. 2010) (per curiam).  Summary judgment will not lie if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Allison v. Flexway Trucking, Inc., 28 F.3d 64, 66-67 (8th Cir. 1994).

The burden is placed on the moving party to establish both the absence of any genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a).  Once the movant has met its burden, the nonmoving party may not simply rest on the allegations in the pleadings, but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists.  Anderson, 477 U.S. at 256; FED. R. CIV. P. 56(e) (each party must properly support its own assertions of fact and properly address the opposing party's assertions of fact, as required by Rule 56(c)).

The underlying substantive law identifies which facts are "material" for purposes of a motion for summary judgment.  Anderson, 477 U.S. at 248.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  Id. (citing 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2725, at 93-95 (3d ed. 1983)).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Id. at 247-48.

10

Essentially, the availability of summary judgment turns on whether a proper jury question is presented: "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250.

Here, Mr. Barghart argues he is entitled to summary judgment due to "Respondents failure to abide by the Courts Order in any manner for 'Months' after service of order lends to the 'Fact' that the Respondent has no 'Genuine Dispute' to any 'Material Fact' . . . ." See Docket No. 6, p. 2. The facts allged in Mr. Banghart's Local Rule 56.1 statement of materials facts relate only to respondents' failure to timely respond. Docket No. 7. Mr. Banghart's sole contention in favor of summary judgment is that respondents' response to his habeas petition is untimely.

Regardless of whether respondents' response was timely, Mr. Banghart has not met his burden of establishing there are no genuine disputes of material fact. See FED. R. CIV. P. 56(a). The party moving for summary judgment bears the initial responsibility of informing the district court of the basis of its motion and identifying the portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Grp. Health Plan, Inc. v. Philip Morris USA, Inc., 344 F.3d 753, 763 (8th Cir. 2003). Mr. Banghart has

not directed the court to the portions of the record that demonstrate the absence of a genuine issue of material fact *related to his claims of ineffective assistance of counsel.*

Alleging that respondents' response was untimely is not enough for Mr. Banghart to meet his burden under Rule 56; he was required to inform the court how the record establishes the absence of genuine issues of material fact related to the claims in his § 2255 petition. This he did not do. Accordingly, Mr. Banghart's motion for summary judgment should be denied, and the court moves on to respondents' motion to dismiss.

**B.     Scope of a § 2254 Petition**

A state prisoner who believes he is incarcerated in violation of the Constitution or laws of the United States may file a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The Anti-Terrorism and Effective Death Penalty Act ("AEDPA") constrains federal courts to exercise only a "limited and deferential review of underlying state court decisions." Osborne v. Purkett, 411 F.3d 911, 914 (8th Cir. 2005) (quoting Lomholt v. Iowa, 327 F.3d 748, 751 (8th Cir. 2003)). A federal court may not grant a writ of habeas corpus unless the state court's adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). A state court decision is "contrary to" clearly established federal law if it "applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless

12

arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (O'Connor, J., concurring). A federal habeas court may not issue the writ merely because it concludes the state court applied the clearly established federal law erroneously or incorrectly. Id. at 411. "Rather, that application must also be *unreasonable*." Id. (emphasis added). See also Finch v. Payne, 983 F.3d 973, 979 (8th Cir. 2020).

The state court's factual findings are presumed to be correct, and a federal habeas court may not disregard the presumption unless specific statutory exceptions are met. Thatsaphone v. Weber, 137 F.3d 1041, 1046 (8th Cir. 1998); 28 U.S.C. § 2254(e). A federal habeas court must "more than simply disagree with the state court before rejecting its factual determinations. Instead, it must conclude that the state court's findings lacked even fair support in the record." Marshall v. Lonberger, 459 U.S. 422, 432 (1983) (quotation omitted); see also Thatsaphone, 137 F.3d at 1046.

## C.    Mr. Banghart's § 2254 Petition Is Timely Under the AEDPA Statute of Limitations

AEDPA contains a one-year statute of limitations. Specifically, 28 U.S.C. § 2244(d) provides in relevant part:

> **(d)**    **(1)** A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of:
>
> > **(A)** the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > **(B)** the date on which the impediment to filing an application created by State action in violation of the

Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

**(C)** the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

**(D)** the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

**(2)** The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

See 28 U.S.C. § 2244(d)(1) and (2).

A judgment or state conviction is final, for purposes of commencing the statute of limitation period, at "either (i) the conclusion of all direct criminal appeals in the state system, followed by either the completion or denial of certiorari proceedings before the United States Supreme Court; or (ii) if certiorari was not sought, then by the conclusion of all direct criminal appeals in the state system followed by the expiration of the time allotted for filing a petition for the writ." Smith v. Bowersox, 159 F.3d 345, 348 (8th Cir. 1998). The time allotted for filing a petition for writ of certiorari with the Supreme Court is ninety days. Jihad v. Hvass, 267 F.3d 803, 804 (8th Cir. 2001). If a petitioner does not timely seek an appeal of his judgment to the state's highest court, the judgment becomes final when his time for seeking review with the state's highest court expired. Gonzalez v. Thaler, 565 U.S. 134, 150 (2012).

14

The limitations period for § 2254 petitions is subject to statutory tolling. See 28 U.S.C. § 2244(d)(2). This one-year statute of limitation period is tolled, or does not include, the time during which a properly filed application for state post-conviction relief or other collateral review is pending in state court. Faulks v. Weber, 459 F.3d 871, 873 (8th Cir. 2006); 28 U.S.C. § 2244(d)(2). The phrase "post-conviction or other collateral review" in § 2254's tolling provision encompasses the "diverse terminology that different States employ to represent the different forms of collateral review that are available after a conviction." Duncan v. Walker, 533 U.S. 167, 177 (2001). Thus, § 2254's tolling provision "applies to all types of state collateral review available after a conviction." Id.

State collateral or post-conviction proceedings "are 'pending' for the period between the trial court's denial of the [post-conviction relief] and the timely filing of an appeal from it." Maghee v. Ault, 410 F.3d 473, 475 (8th Cir. 2005) (citing Peterson v. Gammon, 200 F.3d 1202, 1203 (8th Cir. 2000)); see also Johnson v. Kemna, 451 F.3d 938, 939 (8th Cir. 2006) (an application for state post-conviction review is pending until a mandate is issued).

However, state proceedings are not pending for the ninety-day period "following the final denial of state post-conviction relief, the period during which an unsuccessful state court petitioner may seek a writ of certiorari from the United States Supreme Court." Jihad, 267 F.3d at 805. Additionally, "[s]tate proceedings are not pending during the time between the end of direct review and the date an application for state [post-conviction relief] is filed."

15

Maghee, 410 F.3d at 475 (citing Painter v. Iowa, 247 F.3d 1255, 1256 (8th Cir.

2001)).  In short, the one-year statute of limitations begins to run after the

state conviction is final, is tolled while state habeas proceedings are pending,

and then begins running again when state habeas proceedings become final.

Curtiss v. Mount Pleasant Corr. Facility, 338 F.3d 851, 853 (8th Cir. 2003).

Applying these principles to Mr. Banghart's case, his federal habeas

petition is timely under the one-year statute of limitations.  Mr. Banghart's

judgment of conviction was filed on January 28, 2016.  He filed a direct appeal

but later voluntarily dismissed it.  The South Dakota Supreme Court entered

its order dismissing the appeal on August 11, 2016.  Therefore, assuming

without so holding, Mr. Banghart's conviction would have become final ninety

days later, on November 9, 2016.[3]  The AEDPA limitations period ran from the

next day, November 10, 2016, to February 23, 2017, when Mr. Banghart

initiated his state-court habeas action—a total of 133 days.  The AEDPA

---

[3] The Eighth Circuit has not addressed the issue of the date a conviction
becomes final when a direct appeal is voluntarily dismissed.  The court
assumes, without so holding, that under these facts Mr. Banghart is entitled to
tolling for the ninety-day period during which he could have, but did not,
petition for certiorari to the United States Supreme Court.  See Dumarce v.
Weber, 4:16-CV-04034-KES, 2016 WL 4249780, at *3 n.3 (D.S.D. July 15,
2016), report and recommendation adopted, 2016 WL 425054 (D.S.D. Aug. 10,
2016), denying cert. of appealability, 2016 WL 9526512 (8th Cir. Dec. 12,
2016).  Accord Chapman v. McNeill, No. 3:08cv5/LAC/EMT, 2008 WL
2225659, at *3 (N.D. Fla. May 28, 2008) (concluding a state conviction
becomes final, for AEDPA purposes, ninety days after the state appellate court
grants a motion for voluntary dismissal of the appeal).  But see Paiz v. Hoshino,
No. CV 12-5770-VAP (SP), 2013 WL 1935468, at *2 (C.D. Cal. Apr. 2, 2013)
(state prisoner's conviction became final when appellate court granted request
to voluntarily dismiss direct appeal)

16

limitations period was tolled while his state habeas action was pending—from February 23, 2017, to February 26, 2021, when the South Dakota Supreme Court denied Mr. Banghart's motion for a certificate of probable cause. Therefore, by filing this federal habeas petition on April 15, 2021, Mr. Banghart still had 184 days left of the one-year statute of limitations.[4]   Accordingly, Mr. Banghart's petition is timely under AEDPA.

**D.    Rule 12(b)(6) Standard**

Respondents' motion to dismiss is based on Federal Rule of Civil Procedure 12(b)(6), which allows dismissal if the petitioner has failed to state a claim upon which relief can be granted.  Petitioners must plead "enough facts to state a claim to relief that is *plausible* on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (emphasis added).

Under Federal Rule of Civil Procedure 8(a)(2), a petitioner must plead only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Id. at 554-55 (quoting FED. R. CIV. P. 8(a)(2)).  A petition does not need "detailed factual allegations" to survive a motion to dismiss, but a petitioner must provide the grounds for his entitlement to relief and cannot merely recite the elements of his cause of action.  Id. at 555 (citing Conley v. Gibson, 355 U.S. 41, 47 (1957); Sanjuan v. Am. Bd. of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994); Papasan v. Allain, 478 U.S.

---

[4] Thus, even without the benefit of the 90 days to file a petition for certiorari Mr. Banghart's petition would still be timely.  Without the benefit of that 90-day period, Mr. Banghart's petition would still have been filed with 94 days to spare on the one-year AEDPA limitations period.

265, 286 (1986)).  There is also a "plausibility standard" which "requires a complaint with enough factual matter (taken as true)" to support the conclusion that the petitioner has a valid claim.  Id. at 556.  The petitioner's complaint must contain sufficiently specific factual allegations in order to cross the line between "possibility" and "plausibility" of entitlement to relief.  Id.

There are two "working principles" that apply to Rule 12(b)(6) motions. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  First, courts are not required to accept as true legal conclusions "couched as . . . factual allegation[s]" contained in a complaint.  Id. (citing Twombly, 550 U.S. at 555).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. (quoting Twombly, 550 U.S. at 555).  Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  Id. at 678-79.

Second, the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. at 679 (quoting decision below, Iqbal v. Hasty, 490 F.3d 143, 157-158 (2d Cir. 2007)).  Where the petitioner's allegations are merely conclusory, the court may not infer more than the mere possibility of misconduct, and the petition has alleged "but it has not 'show[n]' " that he is entitled to relief as required by Rule 8(a)(2).  Iqbal, 556 U.S. at 679 (emphasis added).

The Court explained that a reviewing court should begin by identifying statements in the complaint that are conclusory and therefore not entitled to the presumption of truth.  Id. at 679-80.  Legal conclusions must be supported

18

by factual allegations demonstrating the grounds for a petitioner's entitlement to relief. Id. at 679; Twombly, 550 U.S. at 555; FED. R. CIV. P. 8(a)(2). A court should assume the truth only of "well-pleaded factual allegations," and then may proceed to determine whether the allegations "plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

Although a Rule 12(b)(6) motion challenges the sufficiency of a petitioner's pleading, courts evaluating a Rule 12(b)(6) motion are not strictly limited to evaluating only the petition. Dittmer Props., L.P. v. F.D.I.C., 708 F.3d 1011, 1021 (8th Cir. 2013). They may consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." Id. (quoting Miller v. Redwood Toxicology Lab., Inc., 688 F.3d 928, 931 n.3 (8th Cir. 2012) (quoting 5B Charles A. Wright & Arthur R. Miller, Fed. Practice & Procedure § 1357 (3d ed. 2004))). In a habeas action, it is appropriate for the court to take judicial notice of the settled record in the underlying criminal proceedings when evaluating a motion to dismiss. See Hood v. United States, 152 F.2d 431 (8th Cir. 1946) (federal district court may take judicial notice of proceedings from another federal district court); Matter of Phillips, 593 F.2d 356 (8th Cir. 1979) (proper for federal court to take judicial notice of state court pleadings); Green v. White, 616 F.2d 1054 (8th Cir. 1980) (court of appeals may take judicial notice of district court filings). This court has taken judicial notice of Mr. Banghart's criminal circuit court file, his direct appeal file, and his state

19

habeas files at the circuit and supreme court levels.  These are the principles guiding the court's evaluation of respondents' motion.

### E.     Mr. Banghart's Unexhausted Procedurally Defaulted Claims

#### 1.     State Court Exhaustion Requirement

Respondents argue that two of Mr. Banghart's claims of ineffective assistance of counsel, specifically claims two and four of grounds I and II, are unexhausted.  Docket No. 10, p. 18.  Under AEDPA, federal habeas review of state court convictions is limited to claims the petitioner previously presented to the state courts for consideration:

> (b)(1) An application for a writ of habeas corpus on behalf of person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
> > (A) the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B)     (i) there is an absence of available State corrective process; or
> >
> > (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> *     *     *
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

See 28 U.S.C. § 2254(b) and (c).  The above codifies what was previously a judicial doctrine of exhaustion.

A federal court may not consider a claim for relief in a habeas corpus petition if the petitioner has not exhausted his state remedies.  See 28 U.S.C.

§ 2254(b).  "[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."  O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999).  If a ground for relief in the petitioner's claim makes factual or legal arguments that were not present in the petitioner's state claim, then the ground is not exhausted. Kenley v. Armontrout, 937 F.2d 1298, 1302 (8th Cir. 1991).  The exhaustion doctrine protects the state courts' role in enforcing federal law and prevents the disruption of state judicial proceedings.  Rose v. Lundy, 455 U.S. 509, 518 (1982).  The Supreme Court has stated:

> Because it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation, federal courts apply the doctrine of comity, which teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter.

Rose, 455 U.S. at 518 (quotations omitted), superseded by AEDPA as noted in Rhines v. Weber, 544 U.S. 269, 273-75 (2005).

The exhaustion rule requires state prisoners to seek complete relief on all claims in state court prior to filing a writ of habeas corpus in federal court. Federal courts should, therefore, dismiss a petition for a writ of habeas corpus that contains claims that the petitioner did not exhaust at the state level.  See 28 U.S.C. § 2254(b) & (c); Rose, 455 U.S. at 522.  A petitioner's procedurally defaulted claims are barred from federal review unless there is a showing of either cause and prejudice or actual innocence.  Bousley v. United States, 523 U.S. 614, 622 (1998).

21

A prisoner must complete the entire state court post-conviction process—a habeas proceeding in circuit court and an appeal to the Supreme Court of South Dakota—on each of his claims before he can raise them in federal court. O'Sullivan, 526 U.S. at 845; Tripp v. Dooley, No. 4:20-cv-04177-LLP, 2020 WL 8483823, at *1 (D.S.D. Dec. 17, 2020). He "must 'present the same facts and legal theories to the state court that he later presents to the federal courts.' " Stephen v. Smith, 963 F.3d 795, 801 (8th Cir. 2020) (quoting Jones v. Jerrison, 20 F.3d 849, 854 (8th Cir. 1994)).

A federal court must determine whether the petitioner fairly presented an issue to the state courts in a federal constitutional context. Satter v. Leapley, 977 F.2d 1259, 1262 (8th Cir. 1992). "To satisfy exhaustion requirements, a habeas petitioner who has, on direct appeal, raised a claim that is decided on its merits need not raise it again in a state post-conviction proceeding." Id. (citation omitted). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan, 526 U.S. at 845. "A claim is considered exhausted when the petitioner has afforded the highest state court a fair opportunity to rule on the factual and theoretical substance of his claim." Ashker v. Leapley, 5 F.3d 1178, 1179 (8th Cir. 1993) (citation omitted).

### a. Did Mr. Banghart Present His Federal Habeas Corpus Claims to the State Courts?

Fairly presenting a federal claim requires more than simply going through the state courts:

> The rule would serve no purpose if it could be satisfied by raising one claim in the state courts and another in the federal courts. Only if the state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding does it make sense to speak of the exhaustion of state remedies. Accordingly, we have required a state prisoner to present the state courts with the same claim he urges upon the federal courts.

Picard v. Connor, 404 U.S. 270, 276 (1971). It is also not enough for the petitioner to assert facts necessary to support a federal claim or to assert a similar state-law claim. Ashker, 5 F.3d at 1179. The petitioner must present both the factual and legal premises of the federal claims to the state court. Smittie v. Lockhart, 843 F.2d 295, 297 (8th Cir. 1988) (citation omitted).

"The petitioner must 'refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.'" Ashker, 5 F.3d at 1179 (quoting Kelly v. Trickey, 844 F.2d 557, 558 (8th Cir. 1988)). This does not, however, require petitioner to cite "book and verse on the federal constitution." Picard, 404 U.S. at 278 (citing Daugharty v. Gladden, 257 F.2d 750, 758 (9th Cir. 1958)). The petitioner must simply make apparent the constitutional substance of the claim. Satter, 977 F.2d at 1262.

Respondent argues that two of Mr. Banghart's claims, claims two and four, are improperly exhausted and there are no non-futile state remedies that he could pursue to properly exhaust those claims. See Docket No. 10, pp. 20-22. Mr. Banghart opposes this, arguing that "[a]ll claims were submitted to State Court on Petition, testimony was taken and Judge Hanson ruled on all 4 claims." Docket No. 18, p. 3.

In both ground I (Sixth Amendment ineffective assistance) and ground II (Fourteenth Amendment ineffective assistance), Mr. Banghart raises four identical claims; the court will address the two grounds together and assess each claim in turn. Mr. Banghart's first claim is that trial counsel were ineffective for failing to object to evidence regarding an incident where Mr. Banghart shaved the victim's pubic area with a razor. Docket No. 1, pp. 4-6. According to the record, Mr. Banghart raised this claim in his state habeas petition (Docket No. 10-7, p. 3), presented evidence to support his argument (Docket No. 10-9, pp. 14-16), and raised this claim in his motion for certificate of probable cause to the Supreme Court of South Dakota after the habeas court denied relief (Docket No. 10-12, p. 3). Therefore, claim one was properly exhausted, and, thus, Mr. Banghart can raise it with this court.

Mr. Banghart's third claim is that trial counsel were ineffective in their handling of the state's expert witness. Docket No. 1, pp. 4-6. Specifically, Mr. Banghart contends that trial counsel: (1) failed to object to testimony presented by an expert witness called by the state; (2) failed to consult with or present testimony from an expert to counter or rebut said testimony; and (3) failed to present expert testimony showing that the proper procedures for conducting a forensic interview of the alleged child victim were not followed and that the investigators' use of the allged child victim in attempting to elicit incriminating statements from the petitioner served to improperly influence and reinforce the memory of a child witness. Id. According to the record, Mr. Banghart raised this claim in his state habeas petition (Docket No. 10-7,

p. 5), presented evidence to support his argument (Docket No. 10-9, pp. 5-14), and raised this claim in his motion for certificate of probable cause to the Supreme Court of South Dakota after the habeas court denied relief (Docket No. 10-12, p. 3).  Therefore, the court holds that claim three was properly exhausted, and, thus, Mr. Banghart can raise it with this court.

However, Mr. Banghart's second and fourth claims are unexhausted. First, looking to the South Dakota Circuit Court's opinion denying Mr. Banghart habeas relief, the court stated, "Petitioner raised issues three and four[5] in his Petition, but it appears he has abandoned them because he did not address them at the evidentiary hearing or in his post-hearing briefs.  No evidence was provided to establish ineffective assistance of counsel with respect to these claims."  Docket No. 10-9, p. 17.  Second, Mr. Banghart abandoned these claims in his motion for certificate of probable cause to the Supreme Court of South Dakota after his habeas relief was denied.  See Docket No. 10-12, p. 3.

By abandoning these claims, Mr. Banghart left " 'an unresolved question of fact . . . [that has] an important bearing' on [his] federal habeas claim."  King v. Kemna, 266 F.3d 816, 822 (8th Cir. 2001) (quoting Granberry v. Greer, 481 U.S. 129, 134-35 (1987)).  "Where a prisoner deliberately bypasses an adequate state remedy, or purposefully withholds or withdraws a known claim from a prior application for federal relief, that may be deemed a waiver of any

---

[5] Issues three and four that the state circuit judge referenced are similar to claims two and four in grounds I and II.

25

right to a subsequent hearing on the claim." <u>Wilwording v. Swenson</u>, 502 F.2d

844, 849 (8th Cir. 1974). Here, because Mr. Banghart abandoned claims two

and four midstream in his state habeas action, in his post-hearing briefs, and

in his certificate of probable cause to the South Dakota Supreme Court,

Mr. Banghart deprived those courts of the first chance to decide his claims.

<u>See</u> <u>Rose</u>, 455 U.S. at 518. Therefore, Mr. Banghart's claims two and four of

grounds I and II for habeas relief are  not exhausted.

### b.    Are There Available, Non-Futile State Remedies?

The next question the court must analyze is whether it would serve any

purpose to dismiss Mr. Banghart's unexhausted claims without prejudice so

that he can return to state court to present those claims. Put another way, if

the court did so order, are there any currently available non-futile state

remedies for Mr. Banghart? Unfortunately, the answer is "no."

South Dakota law provides as follows for second or successive state

habeas petitions:

> A claim presented in a second or subsequent habeas corpus
> application under this chapter that was presented in a prior
> application under this chapter or otherwise to the courts of this
> state by the same applicant shall be dismissed.

> Before a second or subsequent application for a writ of habeas
> corpus may be filed, the applicant shall move in the circuit court of
> appropriate jurisdiction for an order authorizing the applicant to
> file the application.

> The assigned judge shall enter an order denying leave to file a
> second or successive application for a writ of habeas corpus
> unless:

>> (1) The applicant identifies newly discovered evidence that, if
>> proven and viewed in light of the evidence as a whole, would

be sufficient to establish by clear and convincing evidence that no reasonable fact finder would have found the applicant guilty of the underlying offense; or

(2) The application raises a new rule of constitutional law, made retroactive to cases on collateral review by the United States Supreme Court and the South Dakota Supreme Court, that was previously unavailable.  The grant or denial of an authorization by the circuit court to file a second or subsequent application shall not be appealable.

See SDCL § 21-27-5.1.  The court finds that Mr. Banghart cannot satisfy these exceptions.

Here, Mr. Banghart's claims all arise out of alleged ineffective assistance provided by his two trial attorneys.  Mr. Banghart has been aware of the facts surrounding his trial and trial counsel's handling of his case since his trial's conclusion, and he has not alleged any newly discovered evidence.

Likewise, all four of Mr. Banghart's claims, arising out of his trial attorney's ineffective assistance, are well established through Supreme Court precedent in Strickland.  Since 1984, Strickland has been the landmark case used by federal and state courts across the country in determining ineffective assistance of counsel.  Therefore, Mr. Banghart cannot argue that his claims are based on a new, and retroactively applied, rule of constitutional law.  Thus, Mr. Banghart does not enjoy any non-futile state avenue for pursuing exhaustion of state remedies.

### 2.    Procedural Default

Closely related to the doctrine of state court exhaustion is the doctrine of procedural default.  Both doctrines are animated by the same principals of comity—that is, in our dual system of government, federal courts should defer

action on habeas matters before them when to act on those petitions would undermine the authority of state courts, which have equal obligations to uphold the constitution.  See Coleman v. Thompson, 501 U.S. 722, 731 (1991) (quoting Rose, 455 U.S. at 518).  If a petitioner has failed to exhaust administrative remedies, and further non-futile remedies are still available to him in state court, then the federal court dismisses the federal petition without prejudice, allowing the petitioner to exhaust his state court remedies. Carmichael v. White, 163 F.3d 1044, 1045 (8th Cir. 1998).  Where the petitioner has no further state remedies available to him, analysis of the procedural default doctrine is the next step.

Procedural default is sometimes called the "adequate and independent state ground" doctrine.  A federal habeas petitioner who has defaulted his federal claims in state court by failing to meet the state's procedural rules for presenting those claims has committed "procedural default."  Coleman, 501 U.S. at 731-32, 735 n.1.  If federal courts allowed such claims to be heard in federal court, they would be allowing habeas petitioners to perform an "end run" around state procedural rules.  Id.  However, where no further non-futile remedy exists in state court, it is not feasible to require the petitioner to return to state court as would be the case in a dismissal for failure to exhaust state remedies.

In the Coleman case, the habeas petitioner, Coleman, had defaulted all of his federal claims by filing his notice of appeal from the state trial court three days late.  Coleman, 501 U.S. at 727-28, 749.  The state appellate court then

refused to hear Coleman's appeal based on his late filing of his notice of appeal. Id. at 740. The Court held "[i]n all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."[6] Id. at 750. See also Ruiz v. Norris, 71 F.3d 1404, 1409 (8th Cir. 1995) ("A district court need not consider the merits of a procedurally defaulted claim.") (citation omitted).

"A state procedural default bars federal habeas review unless the petitioner can demonstrate cause for the default *and* actual prejudice as a result of the alleged violation of federal law." Maynard v. Lockhart, 981 F.2d 981, 984 (8th Cir. 1992) (quotation omitted, emphasis added). If no "cause" is found, the court need not consider whether actual prejudice occurred. Id. at 985; Wyldes v. Hundley, 69 F.3d 247, 253 (8th Cir. 1995) (citations omitted).

"The requirement of cause . . . is based on the principle that petitioner must conduct a reasonable and diligent investigation aimed at including all relevant claims and grounds for relief . . . ." Cornman v. Armontrout, 959 F.2d

---

[6] To fit within the fundamental miscarriage of justice exception, the petitioner must make a showing of actual innocence. Schlup v. Delo, 513 U.S. 298, 321 (1995), superseded on other grounds by statute as stated in Rivas v. Fischer, 687 F.3d 514, 541 n.36 (2d Cir. 2012). A successful claim of actual innocence requires the petitioner to support his allegations with new, reliable evidence. Weeks v. Bowersox, 119 F.3d 1342, 1351 (8th Cir. 1997).

727, 729 (8th Cir. 1992) (quotation omitted).  The habeas petitioner must show that "some objective fator *external to* [*petitioner*] impeded [his] efforts."  Id. (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986) (emphasis added)).

A petitioner may show cause by demonstrating that the factual or legal basis for a claim was not reasonably available to the petitioner at the time or that there was interference by officials which prevented the petitioner from exhausting his state remedies.  Murray, 477 U.S. at 488.  A petitioner's lay status, *pro se* status, and lack of education are not sufficient cause to excuse a procedural lapse in failing to pursue state court remedies.  See Stewart v. Nix, 31 F.3d 741, 743 (8th Cir. 1994); Smittie, 843 F.2d at 298.  Illiteracy or low intelligence are also not enough to demonstrate cause.  See Criswell v. United States, 108 F.3d 1381, *1 (8th Cir. 1997) (per curiam) (unpub'd); Cornman, 959 F.2d at 729.  Finally, neither is ignorance of the law.  Maxie v. Webster, No. 91-3292, 1992 WL 302247, at *1, 978 F.2d 1264 (table) (8th Cir. Oct. 26, 1992).  Here, Mr. Banghart's two claims that are facing procedural default are claims two and four of grounds I and II.

Mr. Banghart argues that claims two and four of ground I and II are properly exhausted and not procedurally defaulted because, "All Claims were submitted to State Court on Petition, testimony was taken and Judge Hanson ruled on all 4 claims."  Docket No. 18, p. 3.  Essentially, Mr. Banghart is arguring that he did present these two claims at the state habeas hearings and Judge Hanson ruled on all four of his claims.  This is incorrect.

While Mr. Banghart did submit all four claims to state court in his habeas petition, no evidence was presented for claims two and four of grounds I and II.  For claim two, at the state habeas proceedings, Mr. Binger was asked about testimony regarding the credibility of the chief investigator.  See Banghart v. Darin Young, Civ 17-100 at pp. 247-48 (Habeas Hearing Transcript ("HT") at pp. 79-80).  Mr. Binger responded, "That argument or that one subsection of our petition claiming that the defense attorney had elicited damaging statements from the agent page, that's just one subsection of our petition and we'll withdraw it."  Id. at 248 (HT at p. 80).

For claim four, at the state habeas proceedings, Mr. Binger stated, "And Number 4[7] I will concede that we started this case in 2017 believing that there would be new evidence that we could produce. We did not for various reasons, so I think her point about Number 4 is probably valid. We're not really going to end up having an argument on that point."  Id. at p. 94 (HT at p. 57).  Judge Hanson then asked, "And item 4, the petitioner does not have evidence or further information other than perhaps any relation to the transcript that they would offer at this point," to which Mr. Binger responded in the affirmative.  Id. at 94-95 (HT at p. 57-58).  Clearly, these statements by Mr. Binger show that Mr. Banghart's claims two and four were abandoned at the state habeas hearing.

Additionally, Mr. Banghart's argument that Judge Hanson ruled on all four claims is misplaced.  In her memorandum opinion denying habeas relief,

---

[7] Number 4 refers to Mr. Banghart's fourth claim in his habeas petition.

Judge Hanson correctly concluded that issues three and four, or claims two and four in Mr. Banghart's federal habeas petition, were abandoned at the hearings and no evidence was provided to establish ineffective assistance of counsel with respect to them. See Docket No. 10-9, p. 17. Judge Hanson did not address the merits of claims two and four when making her ruling, but rather ruled that these claim were, in effect, defaulted. Therefore, Mr. Banghart's argument that claims two and four of his habeas petition were properly presented in the state habeas proceedings fails to pass muster.

Thus, unless Mr. Banghart argues that Mr. Binger's failure to present claims two and four at the state habeas hearing was ineffective assistance of counsel and constitutes "cause" to excuse him from procedural default, then these two claims are procedurally defaulted. Mr. Banghart never makes such an argument. In fact, Mr. Banghart never alleges that his state habeas counsel, Mr. Binger, was ineffective at all—rather, Mr. Banghart's claims stem solely from his trial counsel's performance. See Docket No. 1, p. 5-6. However, for purposes of this report and recommendation, the court will address the issues of cause and actual prejudice.

If Mr. Banghart were to have made the assertion that Mr. Binger was ineffective at the habeas level and that this ineffectiveness constitutes cause, he still would have failed to establish cause for the default *and* actual prejudice as a result of the alleged violation of federal law. Here, Mr. Banghart's state habeas attorney, Mr. Binger, raised all four claims under ground I and II of ineffective assistance of counsel. See Docket No. 10-7. On behalf of Mr.

Banghart, Mr. Binger acted reasonably by focusing his attention in the state evidentiary hearings on trial counsels' handling of expert witnesses and the shaving incident (claims one and three) and abandoning the claims related to the handling of the state's chief investigator and failure to conduct an investigation (claims two and four).

The Supreme Court has long held that counsel need only raise those arguments that are likely to succeed. See Davila v. Davis, 137 S. Ct. 2058, 2067 (2017) (citing Smith v. Murray, 477 U.S. 527, 536 (1986); Jones v. Barnes, 463 U.S. 745, 751-53 (1983)). "Reasonable . . . strategy requires an attorney to limit the appeal to those issues which he determines to have the highest likelihood of success. To perform competently under the Sixth Amendment, counsel is neither required nor even advised to raise every conceivable issue." Parker v. Bowersox, 94 F.3d 458, 462 (8th Cir. 1996). The decision to pursue some arguments and abandon others is only deficient performance if the abandoned claim "was plainly stronger than those actually presented." Davila, 137 S. Ct. at 2067.

Here, it was reasonable for Mr. Binger to abandon claims two and four of grounds I and II. Further, Mr. Banghart has made no assertion that these two abandoned claims—trial counsel's failure in handling the state's chief investigator and failure to investigate the victim's claims—were "plainly stronger than those [claims] actually presented." Id. What Mr. Banghart has effectively done is re-alleged all four claims that he initially presented in his state habeas petition without asserting why foregoing claims two and four

33

during the state proceedings was improper (or even acknowledging that these claims *were* waived). This falls far short of his burden to demonstrate cause. Therefore, Mr. Banghart has failed to show cause exists to excuse his procedural default of those claims.

Because Mr. Banghart has failed to show cause, the court need not reach the question of actual prejudice. Wyldes v. Hundley, 69 F.3d 247, 253 (8th Cir. 1995); Oglesby v. Bowersox, 592 F.3d 922, 926 (8th Cir. 2010). However, for purposes of this report and recommendation, the court will address the issue of whether Mr. Banghart was prejudiced by his default. In order to properly allege actual prejudice, Mr. Banghart must demonstrate that there was a reasonable probability that, due to the decisions by Mr. Binger, the result of the state habeas proceedings would have been different. Strickland, 466 U.S. at 689. Furthermore, Mr. Banghart must demonstrate not merely that the errors in his proceedings constituted a possibility of prejudice, but that the errors worked to his actual and substantial disadvantage, infecting his entire state habeas action. United States v. Frady, 456 U.S. 152, 170 (1982); Correll v. Stewart, 137 F.3d 1404, 1416 (9th Cir. 1998). The court finds that Mr. Banghart has not demonstrated any actual prejudice. In his reply to respondents' motion to dismiss, Mr. Banghart merely denied the reasoning made throughout the motion to dismiss without alleging any facts or making any argument to support his denials. See Docket No. 18, p. 6-7.

Mr. Banghart has also failed to plead a fundamental miscarriage of justice or actual innocence. A successful claim of actual innocence requires

34

the petitioner to support his allegations with new, reliable evidence.  <u>Weeks v. Bowersox</u>, 119 F.3d 1342, 1351 (8th Cir. 1997).  Mr. Banghart "must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt.' "  <u>House v. Bell</u>, 547 U.S. 518, 536-37 (2006) (quoting <u>Schlup</u>, 513 U.S. at 327).  Here, Mr. Banghart has presented no new evidence to prove his claims of ineffective assistance of counsel.  In fact, Mr. Banghart continues to assert the same four claims of ineffective assistance of counsel that he initially alleged in his state habeas petition back in 2017 and 2019.  <u>See</u> Docket No. 10-7.

Therefore, Mr. Banghart has failed to meet his burden of proving both cause *and* actual prejudice to allow consideration of his procedurally defaulted claims, and has failed to show actual innocence.  Thus, this court finds that claims two and four of grounds I and II should be dismissed with prejudice. <u>See Armstrong v. Iowa</u>, 418 F.3d 924, 926-27 (8th Cir. 2005) (dismissal with prejudice is appropriate when petitioner has procedurally defaulted).

## F.    Mr. Banghart's Properly Exhausted Claims

Mr. Banghart has properly presented two claims of ineffective assistance of counsel to the state courts—claims that trial counsel were ineffective for failing to object to evidence regarding the shaving incident and in their handling of the state's expert witness.  Because these two claims are properly exhausted and are not procedurally defaulted, the court addresses the merits of claims one and three of grounds I and II.

35

## 1.    Standards Applicable to Mr. Banghart's Ineffective Assistance Claims

The Sixth Amendment of the Constitution of the United States affords a criminal defendant with the right to assistance of counsel.  U.S. Const. amend. VI.  The Supreme Court "has recognized that 'the right to counsel is the right to the effective assistance of counsel.' "  Strickland v. Washington, 466 U.S. 668, 686 (1984) (quoting McMann v. Richardson, 397 U.S. 759, 771, n.14 (1970)).  Strickland is the benchmark case for determining if counsel's assistance was so defective as to violate a criminal defendant's Sixth Amendment rights and require reversal of a conviction.  Id. at 687.

"When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness."  Id. at 687-88.  The defendant must also show that counsel's unreasonable errors or deficiencies prejudiced the defense and affected the judgment.  Id. at 691.  The defendant must show "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  Id. at 695.  In sum, a defendant must satisfy the following two-prong test.  Id. at 687.

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence

resulted from a breakdown in the adversary process that renders the result unreliable.

Id.

"There is a presumption that any challenged action was sound trial strategy and that counsel rendered adequate assistance and made all significant decisions in the exercise of professional judgment." Hall v. Luebbers, 296 F.3d 685, 692 (8th Cir. 2002) (quotations omitted).  It is the petitioner's burden to overcome this presumption, and a "petitioner cannot build a showing of prejudice on a series of errors, none of which would by itself meet the prejudice test." Id.

Counsel's conduct must be judged by the standards for legal representation which existed at the time of the representation, not by standards promulgated after the representation.  Bobby v. Van Hook, 558 U.S. 4, 7-9 (2009).  American Bar Association standards and similar directives to lawyers are only guides as to the reasonableness of counsel's conduct; they are not its definitive definition.  Id.

The Supreme Court distinguishes between those cases in which the new evidence "would barely have altered the sentencing profile presented to the sentencing judge," and those that would have had a reasonable probability of changing the result.  Porter v. McCollum, 558 U.S. 30, 41 (2009) (quotation omitted).  In assessing the prejudice prong, it is important for courts to consider "the totality of the available mitigation evidence—both that adduced at trial, and the evidence adduced in the habeas proceeding—and reweigh it against the evidence in aggravation." Id. at 40-41 (internal quotation omitted,

37

cleaned up).  It is not necessary for the petitioner to show "that counsel's deficient conduct more likely than altered the outcome" of his case, only that there is "a probability sufficient to undermine confidence in [that] outcome." Id. at 44 (quotation omitted).

Finally, "[i]neffective assistance of counsel is a mixed question of law and fact and thus on habeas review a federal court is not bound by a state court's conclusion that counsel was effective." Whitehead v. Dormire, 340 F.3d 532, 537 (8th Cir. 2003).  However, " 'state court findings of fact made in the course of deciding an ineffectiveness claim are subject to the deference requirement of §2254(d).' " Id. (citing Strickland, 466 U.S. at 698).   That is, "[a] state court's findings of fact are entitled to a presumption of correctness." Miller v. Dormire, 310 F.3d 600 (8th Cir. 2002).   Additionally, judicial scrutiny of attorney performance is highly deferential, with a strong presumption that counsel's conduct falls within the range of reasonable professional conduct.  Strickland, 466 U.S. at 698.

Where a claim of ineffective assistance of counsel is made in a § 2254 petition, the already deferential standard of review of counsel's conduct is paired with the extremely deferential standard of review applicable to federal court review of a state court's rejection of a habeas claim to make the federal court's "highly deferential" review "doubly" so.  Harrington v. Richter, 562 U.S. 86, 105 (2011).  "Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d)." Id.  The inquiry when a Strickland claim is raised in a § 2254

38

petition is "whether there is any reasonable argument that counsel satisfied Stickland's deferential standard."  Id.  The court now turns to each of Mr. Banghart's assertions that counsel was ineffective.

### 2.    Failure to Object to Evidence of Shaving Incident

First, Mr. Banghart asserts in claim one of grounds I and II that "Trial Counsels' performance was deficient in that they failed to object to inadmissible testimony offered, or, in the alternative, failed to request any form of cautionary or limiting instruction regarding an incident wherein Petitioner shaved the victims pubic area with a razor."  Docket No. 1, pp. 5-6.

Under Strickland, strategic decisions such as when to object and how to handle a witness are "virtually unchallengable."  466 U.S. at 690.  Further, the Eighth Circuit has made it clear that trial counsel does not provide deficient performance when they choose not to raise a frivolous or futile motion or objection.  Anderson v. United States, 762 F.3d 787, 794 (8th Cir. 2014) ("Counsel is not ineffective for failing to pursue a motion to suppress that he reasonably believes would be futile.") (citations omitted); Garrett v. United States, 78 F.3d 1296, 1303 n.11 (8th Cir. 1996) ("Ineffective assistance should not be found under Strickland when counsel fails to perform those acts which clearly appear to be futile or fruitless at the time the decision must be made."); Hale v. Lockhart, 903 F.2d 545, 549-50 (8th Cir. 1990) ("[W]e therefore hold that the decision of Hale's counsel not to file a futile motion to transfer was neither deficient performance on his part nor prejudicial to Hale.").

Here, during a recorded conversation between the victim and
Mr. Banghart, the victim told Mr. Banghart that she did not like they way he
touched her and her brother.  Docket No. 10-9, p. 15.  Mr. Banghart responded
to the victim by stating the only touching that occurred was involving the
shaving incident.  Id.  Later on, Mr. Banghart mentioned the shaving incident
to law enforcement, who subsequently confirmed with the victim that
Mr. Banghart shaved her pubic area when she was twelve years old.  Id.  When
told by law enforcement that the victim was alleging sexual abuse,
Mr. Banghart indicated that he had not realized the victim's allegations were
sexual in nature.  Id.  He later admitted during an interview with law
enforcement that he had touched the victim's vaginal area during the shaving
incident in question.  Id.; see also State v. Banghart, 41CRI14-000648 at
p. 630 (Vol. II JT at p. 45).

Given these facts, any objection by trial counsel would have been futile
because this testimony regarding the shaving incident would be admissible
evidence as an opposing party statement, or party admission.  Under SDCL
§ 19-19-801(d)(2), an opposing party statement is a statement that is offered
against an opposing party and: (A) was made by the party in an individual or
representative capacity; (B) is one the party manifested that it adopted or
believed to be true; (C) was made by a person whom the party authorized to
make a statement on the subject; (D) was made by the party's agent or
employee on a matter within the scope of that relationship and while it existed;
or (E) was made by the party's coconspirator during and in furtherance of the

40

conspiracy.  SDCL § 19-19-801(d)(2)(A-E); see also FED. R. EVID. 801(d)(2)(A-E).
Here, clearly Mr. Banghart's admission to law enforcement that he had touched
the victim's vaginal area during the shaving incident was a statement made by
Mr. Banghart and offered against him at trial.  Thus, any objection to this
evidence would have been overruled by the trial judge as an opposing party
statement pursuant to SDCL § 19-19-801(d)(2)(A).

Also, this evidence is highly relevant to the credibility of Mr. Banghart
and the victim, whether these assaults actually occurred, as well as the
circumstances out of which the original criminal charges arose, and
Mr. Banghart presents no arguments to contest it.  The probative value of this
evidence is not substantially outweighed by the danger of unfair prejudice to
Mr. Banghart, and, thus, any objection by trial counsel would have been futile.
See SDCL § 19-19-403; FED. R. EVID. 403.

Mr. Banghart has not shownthat his trial counsel's performance was
constitutionally deficient under the standards imposed by Strickland.  Further,
Mr. Banghart has failed to demonstrate how he was prejudiced by his trial
counsel's strategy and their failure to object because, even if they had objected
to the evidence, Mr. Banghart fails to show how the evidence was inadmissible
in light of SDCL §§ 19-19-801(d)(2) and 19-19-403.

Mr. Banghart asserts, alternatively, trial counsel "failed to request any
form of cautionary or limiting instruction . . ."  Docket No. 1, pp. 5-6.  However,
this claim fails as well.  In Berghuis v. Thompkins, the court held that defense
counsel's failure, in a prosecution for murder and assault, to request a limiting

41

instruction did not amount to ineffective assistance.  560 U.S. 370, 389-90 (2010).  The Court further reasoned that even if the failure to request a limiting instruction was deficient performance, there was no prejudice to the defendant in light of other evidence of his guilt.  Id.  Here, trial counsel's decision to not seek a limiting instruction did not amount to ineffective assistance.  As discussed previously, any attempt to limit the testimony evidence would have been futile as the evidence was clearly admissible as an opposing party statement and its probative value is not substantially outweighed by the dangers of unfair prejudice.

Therefore, the court finds that Mr. Banghart has failed to demonstrate that his trial counsel's performance was constitutionally deficient for failing to object or request a limiting instruction to evidence surrounding the shaving incident and has failed to demonstrate how that failure has prejudiced his defense.  Thus, claim one of grounds I and II for habeas relief should be denied because the state court's determination of this claim was not an unreasonable application of Strickland and thus does not warrant federal habeas relief.

### 3.    Trial Counsel's Ineffective Handling of State's Expert Witness

Mr. Banghart asserts in claim three of ground I and II that "Defense Counsel failed to object to testimony presented by an expert witness called by the State, and failed to consult with or present testimony from an expert to counter or rebut said testimony.  Defense Counsel further failed to present expert testimony showing that the proper procedures for conducting a forensic interview of the alleged child victim were not followed, and that the

investigator's use of the alleged child victim in attempting to elicit incriminiating statements from the Peititoner served to improperly influence and reinforce the memory of a child witness." Docket No. 1, pp. 5-6.

At trial, the state  called Krista Heeren-Graber, the executive director of the South Dakota Network Against Family Violence and Sexual Assault, to testify as an expert.  Docket No. 10-10, p. 2.  Ms. Heeren-Graber testified generally about the reasons and ways a victim may or may not disclose abuse and common reactions of a victim of sexual abuse.  Id.  In South Dakota child sexual abuse cases, qualified experts can inform the jury of characteristics in sexually abused children and describe the characteristics the child exhibits.  See State v. Buchholtz, 841 N.W.2d 449, 459 (S.D. 2013).

Mr. Banghart first argues that trial counsel failed to raise objections to Ms. Heeren-Graber's testimony.  Again, under Strickland, strategic decisions such as when to object and how to handle a witness are "virtually unchallengable."  466 U.S. at 690.  According to the record, as the state was examining Ms. Heeren-Graber to establish her qualifications as an expert, trial counsel did object, challenging her experience with victims of sexual assault, and was permitted to conduct a voir dire examination of Ms. Heeren-Graber.  Docket No. 10-10, p. 2.  After the voir dire examination of Ms. Heeren-Graber by Mr. Banghart's trial counsel, the trial court overruled the objection, noted it, and permitted the state to proceed with its examination.  Id.  Any further objection by Mr. Banghart's trial counsel would have been futile.  Mr. Banghart has not shown he was prejudiced by trial counsel's strategy and their failure to

object because, even if they had further objected to Ms. Heeren-Graber's testimony, Mr. Banghart has failed to show that the testimony was inadmissible.  Indeed, Mr. Banghart has not identified any specific testimony which he believes was inadmissible.  Therefore, Mr. Banghart's trial counsel was not constitutionally deficient, and Mr. Banghart has not demonstrated prejudice from trial counsel's decision to forego further objection to Ms. Heeren-Graber's testimony as an expert witness.

Next, Mr. Banghart argues that trial counsel's performance was deficient because they failed to call their own expert to challenge the credentials of Ms. Heeren-Graber, to address the proper procedures of conducting a forensic interview of a child sexual assault victim, and to counter the investigator's use of the alleged child victim in attempting to elicit incriminiating statements from him.

However, Mr. Banghart does not support this criticism with specific testimony or opinions which he alleges would have had a reasonable probability of changing the outcome of his trial.  See Ashker v. Class, 152 F.3d 863, 876 (8th Cir. 1998) (rejecting ineffective assistance claim grounded in failure to present an expert witness because habeas petitioner made no showing of relevant, exculpatory information an expert would have provided); Ellefson v. Hopkins, 5 F.3d 1149, 1150-51 (8th Cir. 1993) (trial counsel's strategy to forego calling expert and rely on cross-examination of prosecution expert deemed not ineffective assistance of counsel).  See also Wildman v. Johnson, 261 F.3d 832, 839 (9th Cir. 2001) (petitioner failed to show ineffective

assistance because he did not demonstrate how his case was prejudiced by not retaining an expert; "[petitioner] offered no evidence that an . . . expert would have testified on his behalf at trial.  He merely speculates that such an expert could be found.  Such speculation, however, is insufficient to establish prejudice. . . .  [S]peculating as to what [an] expert would say is not enough to establish prejudice.") (citation omitted).

"[A] meaningful opportunity to present a complete defense does not translate into the right of a defendant to present any evidence he may deem important to his defense." Strickland v. Lee, 471 F. Supp. 2d 557, 617 (W.D.N.C. 2007) (citation and quotation omitted).  Instead, to prove prejudice, Mr. Banghart must show the proposed uncalled witness would have testified in his defense, that his testimony would have been favorable, and that his testimony "would have probably changed the outcome of the trial." See Lawrence v. Armontrout, 900 F.2d 127, 130 (8th Cir. 1990); Stewart v. Nix, 31 F.3d 741, 744 (8th Cir. 1994).  The court "should avoid the distorting effects of hindsight and try to evaluate counsel's conduct by looking at the circumstances as they must have appeared to counsel at the time." Rodela-Aguilar v. United States, 596 F.3d 457, 461 (8th Cir. 2010) (quotation omitted). "[C]omplaints of uncalled witnesses are not favored . . . because allegations of what the witness would have testified [to] are largely speculative." Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2002) (citation omitted).  "[T]he petitioner ordinarily should . . . demonstrate, with some precision, the content of the

testimony they would have given at trial." <u>Lawrence</u>, 900 F.2d at 130 (quotation omitted).

Without identifying who could have been called as an expert, if that expert would actually agree to testify on Mr. Banghart's behalf, or what exactly the expert would have testified about, Mr. Banghart merely postulates that such an expert exists. Mr. Banghart has failed to show that calling an expert witness would have favorably influenced and/or changed the jury's verdict or the sentence imposed by the trial judge. <u>Lawrence</u>, 900 F.2d at 130. Trial counsel made the strategic decision to challenge Ms. Heeren-Graber's credentials not by calling another expert, but through cross-examination. <u>See</u> Docket No. 10-9, p. 7. On cross-examination, trial counsel adequately challenged Ms. Herren-Graber's background, training, education, and experience with sexual assault victims, statistics, and delayed reporting of sexual assault. Docket No. 10-10, pp. 2-3. The Eighth Circuit has held that this strategy is not deemed ineffective assistance of counsel. <u>See</u> <u>Ellefson</u>, 5 F.3d at 1150-51.

Mr. Banghart, therefore, failed to carry his burden to show the use an expert witness (1) would have been willing to testify on his behalf; (2) what specifically their testimony would have been or, most importantly; (3) that such testimony would have a reasonable probability of changing the trial's outcome. Thus, the court finds that Mr. Banghart has failed to demonstrate that his trial counsel's performance was constitutionally deficient in dealing with the state's expert and not calling their own expert and has failed to demonstrate how that

46

failure has prejudiced his defense. Claim three of grounds I and II for habeas relief should be denied because the state court's determination of this claim was not an unreasonable application of <u>Strickland</u> and thus does not warrant federal habeas relief.

## CONCLUSION

Based on the foregoing facts, law, and analysis, this magistrate judge respectfully recommends that Mr. Banghart's motion for summary judgment (Docket No. 5) be DENIED, respondents' motion to dismiss (Docket No. 9) be GRANTED in its entirety, and that Mr. Banghart's habeas petition (Docket No. 1) be dismissed with prejudice.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require *de novo* review by the district court. <u>Thompson v. Nix</u>, 897 F.2d 356 (8th Cir. 1990); <u>Nash v. Black</u>, 781 F.2d 665 (8th Cir. 1986).

DATED this 13th day of December, 2021.

BY THE COURT:

_____
VERONICA L. DUFFY
United States Magistrate Judge

47